**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-02707-WYD-MEH

MALIBU MEDIA, LLC,

    *Plaintiff,*

vs.

JOHN BUTLER,

    *Defendant.*

_____

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**
_____

Defendant, John Butler, by and through his undersigned attorneys, Hanes & Bartels LLC, replies to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

**Overview**

Like Plaintiff's Amended Complaint, its Memorandum in Opposition ("Response") is a boilerplate recitation of well-worn platitudes taken from the hundreds of similar cases filed by this Plaintiff across the nation, salted with a warmed-over collection of legal citations to give it the luster of genuine authority. Several pages are devoted to establishing the plausibility standard as the threshold benchmark for dismissal under rule 12(b)(6), which was acknowledged in Defendant's motion. Plaintiff occupies even more pages of its response repeating the dogma of how the bit torrent protocol works and repeatedly boasting that its "well plead" Amended Complaint meets the plausibility

1

standard. What the response fails to do is address the specifics of Defendant's motion to dismiss. In its Introduction, Plaintiff inaccurately asserts that the crux of Defendant's argument is that Plaintiff cannot connect Defendant to the infringement through an IP address. That assessment of Defendant's motion is erroneous on two counts and suggests that the drafter of the Response gave the Defendant's motion very superficial treatment. First, the *crux* of Defendant's argument is that the Amended Complaint fails to meet the plausibility standard of *Khalik v. United Air Lines,* 671 F.3d 1188 (10th Cir. 2012) and the requirements of *Bell Atl. Corp., v. Twombly,* 550 U.S. 544 (2007), because, when boiled down to its essential elements, it is nothing but a compilation of conclusory allegations supported, not by factual allegations relative to this Defendant, but by a camouflage of technical jargon and contradictory and irrelevant contentions by a mystery investigator whose actual report, if one even exists, is not applicable to this case or to this Defendant or this Defendant's IP address. Secondly, Defendant's motion is not based on the evidentiary issue of whether Plaintiff can or cannot connect Defendant to the alleged infringement through an IP address. The motion argues that there are no factual *allegations* in the Amended Complaint that plausibly connect this Defendant to the complained of infringement.

**Plaintiff's Response**

The Achilles' heel of the Amended Complaint and the Response is seen in Plaintiff's unsupported conclusion made in paragraph 27 of the Amended Complaint, that:

> Defendant copied and distributed the constituent elements of each of the original works…,"

Plaintiff's Response attempts to identify something in the Amended Complaint that provides "factual enhancement" for this mere citation of the elements of a cause of action. At page 3 of the Response Plaintiff argues that:

> "[p]laintiff's Amended Complaint describes in detail the operation of the BitTorrent protocol and alleges that Defendant used the protocol to infringe Plaintiff's works."

citing paragraphs 9-16 of the Amended Complaint. This argument is substantively without merit and is actually false. While paragraphs 9-15 may attempt to generically describe the workings of a BitTorrent protocol, paragraph 16 does <u>not</u> allege <u>that Defendant used the protocol to infringe Plaintiff's works</u>. Paragraph 16 states:

> Plaintiff's investigator, IPP International UG, established a direct TCP/IP connection with the Defendant's IP address as set forth in Exhibit A.

A simple analysis of paragraph 16 shows only that the "TCP/IP connection" is more technical gibberish and adds nothing about the Defendant or his IP address. Exhibit A to the Amended Complaint is a charade. Exhibit A does <u>not</u> establish any connection, direct or otherwise, between the Defendant's IP address and any cryptographic hash value of a bit ("bit hash") that are alleged to have been downloaded from Defendant's IP address. Exhibit A lists file hash numbers, which are numbers assigned to a whole movie. Exhibit A is a total sham, designed to deceive the reader into believing that the array of dates and movie file hash numbers creates some evidence of a connection with Defendant's IP address. Exhibit A does not contain a single *bit hash* that identifies the "one or more bits" that were alleged in paragraph 17 of the Amended Complaint to have been downloaded from Defendant. The stepping

3

stones of bit hash that must exist between an IP address and a movie hash value are <u>totally missing</u> from Exhibit A. It contains a bunch of dates, a collection of numbers ("file hash") and names of some of Plaintiff's produced pornographic movies.[1] Except for a page title containing an IP address, there is no stepping stone connection made in Exhibit A between that IP address and the file hash numbers of the listed movies. This vacuity is especially significant when Exhibit A is the lynch pin of Plaintiff's Amended Complaint that is alleged to connect Defendant's IP address with the prolix references to the workings of the BitTorrent protocol. Exhibit A to the Amended Complaint is a deceptive ruse whose recitation of mind-boggling movie file hash numbers, dates and movie titles is deceitfully represented as the result of the application of technology too complex for the ordinary person to comprehend. *Just take our word for it.* Exhibit A fails in its attempt to convey technical assurance and factual support to the clichéd conclusions or the Amended Complaint.

Accordingly, the conclusory allegation in paragraph 27 of the Amended Complaint that "Defendant copied and distributed the constituent elements of each of the original works" is nothing but a naked assertion, a threadbare recital of the elements of a cause of action, devoid of the factual enhancement required by the court in *Khalik, supra. See also Ashcroft v. Iqbal* 556 U.S. 662 at 647. Plaintiff's Response contains nothing to counteract that reality. Furthermore, reciting a page of cases holding that even copying portions of a copyrighted work can result in infringement does not meet

---

[1] Reference is made to paragraphs 19-20 of Defendant's Motion to Dismiss where there is a more detailed discussion of Exhibit A, none of which is addressed or responded to by Plaintiff in its opposition.

the Defendant's argument that tiny electronic "bits" do not constitute "constituent elements" of Plaintiff's movies. In sum, section III A of Plaintiff's Response is nothing but a paraphrase of Plaintiff's Amended Complaint and does not demonstrate that the Amended Complaint pleads facts that *plausibly* support the conclusory allegations that Defendant directly infringed Plaintiff's copyrighted movies.

In section III B of the Response, on page 6, Plaintiff again relies on Exhibit A to establish plausibility for the conclusory allegations in the Amended Complaint. Plaintiff's Response confidently asserts:

> As Exhibit A to Plaintiff's Amended Complaint shows (CM/ECF 12-1), the infringement occurred through Defendant's IP address from January 3, 2013 until September 12, 2013.

Without showing any connection between Defendant's IP address and the *bits* alleged to have been downloaded, the required leap of faith between a listed IP address and a movie hash value and the correlated contention that Exhibit A *plausibly* demonstrates or establishes that "*infringement occurred through Defendant's IP address*" is absurd and to argue that is does is disingenuous in the extreme. Plaintiff quotes from *Patrick Collins, Inc. v. John Doe 1, 2013 WL 2177787 (E.D.N.Y 2013)* (Response, pg. 6) where the court said that plaintiff had adequately pled a plausible claim of copyright infringement but the facts in *Collins* are substantially distinct from the facts of this case and there is no indication that the plaintiff in that case relied on an irrelevant and immaterial exhibit comparable to Exhibit A, on which Plaintiff in the instant case relies totally. That Exhibit A shows that "infringement occurred through Defendant's IP address" is not even imaginable, much less plausible.

5

Plaintiff's feeble assertion in section III B of its Response that "Plaintiff's allegations that Defendant is the infringer are plausible…" is without any basis and has no merit or argumentative value.

With respect to section III C of Plaintiff's Response, Defendant is <u>not</u> impermissibly asking the Court to find that Plaintiff's allegations are false. Plaintiff seizes on the word "evidence," used on page 4 of Defendant's motion, to bootstrap an erroneous contention that Defendant is attempting to adjudicate the truthfulness of the allegations of the Amended Complaint in his motion to dismiss. Again, Plaintiff mischaracterizes the motion. In the motion on page 4 Defendant is emphasizing that the declaration of Tobias Fieser cannot be relied on to furnish the necessary "factual enhancement" for the conclusory allegations because it is misleading and false <u>on its face</u>. Page 5 of the motion analyzes paragraph 17 of the Fieser declaration, showing that it cannot and does not apply to this Defendant and is therefore irrelevant and factually unsupportive of the conclusory allegations of the Amended Complaint. Another look at Paragraph 17 of the declaration is in order:

> IPP's software also logged Defendant's IP address being used to distribute third party files through BitTorrent. This evidence is referred to as the Additional Evidence in the Complaint.

It is acknowledged on page 10 of the Response that "Mr. Fieser takes the same steps in every Mailibu case..." so how can it be certain or even probable or *plausible* that the "Defendant's IP address," is the IP address of this Defendant? Surprisingly, it is Fieser's declaration itself which disproves that it is referring to this Defendant's IP address. The added comment in the declaration that "<u>This evidence is referred to as the</u>

6

_____" is a total betrayal of the intended presumption that the Fieser declaration is referring to this Defendant's IP address. The referred to *Complaint* is not the *Amended Complaint* filed in this case. The Amended Complaint in this case contains no reference whatever to "Additional Evidence." Furthermore, paragraph 17 refers to some unidentified "person," not this Defendant or this Defendant's IP address. In addition, paragraph 17 of the declaration bases its conclusions on occurrences in a date range that is different than the date range set forth in Exhibit A. The many generic references in the Fieser declaration to Exhibit A and to a Defendant's IP address and the obvious avoidance in the declaration of identifying a specific IP address, clearly demonstrate that the Fieser declaration is pure boilerplate and has no specific relevance to this Defendant. Neither Fieser's declaration nor the Amended Complaint give us a clue as to whether Mr. Fieser ever knew of or connected with a computer having this Defendant's IP address. Accordingly, it is clear beyond any doubt that the Fieser declaration is a boilerplate form that is used in all of the hundreds of Malibu Media cases. In any event, it is obvious and beyond legitimate argument that the Fieser declaration does not apply to this Defendant and cannot be used to deliver the *factual enhancements* to the conclusory allegations of the Amended Complaint required by *Khalik.*

In section III E of the Response, Plaintiff struggles to provide some credibility to the Fieser declaration by irrationally exclaiming that the Defendant "is wrong!" However, it is clear that Plaintiff makes no effort to identify where or how Defendant *is wrong* nor does Plaintiff challenge or contest the cited incongruities in the Fieser declaration that

are pointed out in the motion. In sum, the declaration cannot and does not provide any "factual enhancement" to the conclusory allegations of Plaintiff's Amended Complaint. Accordingly, the requirements of *Khalik* are not met and the Amended Complaint must be dismissed.

The discussion of the Fieser declaration cannot be left without adding a footnote of significance. Although the Amended Complaint makes no reference whatever to the Fieser declaration and it is not, by reference, made a part of the Amended Complaint, Defendant's motion to dismiss addressed it because it was of record in this case in Plaintiff's initial motion for allowance of discovery before a rule 26(f) conference. Plaintiff's Response also referred to the declaration and even argued that it was relevant, regardless of its total nonexistence in the context of Plaintiff's Amended Complaint. Regardless of the fact that Defendant has shown that the Fieser declaration is totally sterile and ineffective to sustain the conclusory allegations of the Amended Complaint, the fact is that the Fieser declaration is not part of the Amended Complaint and should therefore not even be considered as providing factual enhancement to the conclusory allegations of the Amended Complaint.

**Omissions in Plaintiff's Response**

In spite of ten pages of argument and case citations in Plaintiff's Response, it cannot escape notice that many of the significant points of Defendant's motion to dismiss have been ignored in the Response.

On page 6 of his Motion Defendant states: "There is not a single fact asserted in the Amended Complaint that would justify the allegation in paragraphs 17, 19 and 20

8

that 'UG downloaded from <u>Defendant</u>' …" **Plaintiff's Response does not dispute this assertion of Defendant in his motion to dismiss**.

Plaintiff does not deny that its present counsel has admitted that an estimated 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material.

Plaintiff does not deny that one of its two co-owners admitted in her declaration that an open wireless connection would prevent them from pursuing a claim.

On pages 12-14 of the Motion, Defendant analyzes the illusory content of paragraphs 11, 13, 15, 17, 19 and 20 of the Amended Complaint. Plaintiff's Response contains **no rebuttal** to this analysis and therefore, it has be assumed to be true and accurate.

Plaintiff does not deny that the mass of technological jargon about BitTorrent, hash values, cryptography and similar expressions in the Amended Complaint are intended to obfuscate reality and substitute for factual allegations that would actually provide the necessary "factual enhancement" for the many conclusory and legal allegations on which the Amended Complaint is based.

Plaintiff does not deny that one or more "bits" of a work do not constitute the *constituent elements* of a copyrighted work.

### <u>Conclusion</u>

The Court is respectfully requested to look beyond the many cases cited by Plaintiff who have refused to dismiss similar cases filed by this Plaintiff and critically examine the fragile underpinnings of the Amended Complaint that has brought this

Defendant to court. Defendant acknowledges that showing a lack of plausibility in a plaintiff's complaint is a high hurdle, but this Defendant has cleared the bar. In this case the plausibility of the so-called factual allegations that provide enhancement for the conclusory allegations of copyright infringement is grounded on Exhibit A to the Amended Complaint. As pointed out above, Exhibit A is a nullity, void of any meaning or relevance that establishes connectivity between Defendant's IP address and the conclusively alleged copying and distributing of the named pornographic films.

The Amended Complaint filed in this case is subject to dismissal for failure to state a claim for relief under rule 12(b)(6), but more importantly, the Amended Complaint and the Response represent the quintessential example of the process in which Plaintiff Malibu Media has created a coercive litigation business in which the Federal Courts have become an unwitting partner. Legally built on beach sand, the thousands of threats of suits and the few complaints that are filed by this Plaintiff depend for their bona fides on an assumed technology that has never met the test of cross examination in a trial and in this case the Plaintiff asks the Court to put its trust in a spurious Exhibit A to pass the first test of a motion to dismiss.[2]

---

[2] The disingenuous nature of these lawsuits, and this one in particular, and the attempt to use the Court's intimidating power to coerce quick settlements is demonstrated by Plaintiff's post filing activities. Plaintiff's Amended Complaint was filed in this Court on December 23, 2013 and this Defendant was served with process on January 10, 2014 (Exhibit 1 hereto). Notwithstanding these activities, Plaintiff's counsel is now threatening that if settlement is not made immediately, Plaintiff is going to actually file its Amended Complaint and serve the Defendant. See Exhibit 2 hereto. Such threats emphasize the extent of Plaintiff's litigation related business and the role in that business being cast upon the Court by this Plaintiff.

Plaintiff's Amended Complaint does not pass the plausibility test of *Khalik* and the Court is respectfully requested to grant Defendant's motion to dismiss.

Respectfully submitted this 11th day of March, 2014.

                        HANES & BARTELS LLC

                        */s/Richard W. Hanes*
                        Attorneys for Defendant
                        Richard W. Hanes, Colorado #1206
                        102 South Tejon Street, Suite 800
                        Colorado Springs, CO 80903-2239
                        Telephone: (719) 260-7900

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of March 2014, I electronically filed the foregoing **DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

*Attorneys for Plaintiff:*
Jason Kotzker, Esq.
KOTZKER LAW GROUP
9609 S. University Blvd., #632134
Highlands Ranch, CO 80163

                        */s/ Lynne R. Krause*
                        Lynne R. Krause, Paralegal